UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RENZER BELL,

            Plaintiff,

-vs-

PENSKE AUTOMOTIVE GROUP, INC.,
and UNITED AUTO GROUP, INC.,

            Defendants.
_____/

Civil No. 2:08-cv-13241
Hon. John Feikens

**ORDER OF DISMISSAL OF PLAINTIFF'S COMPLAINT WITH PREJUDICE**

**Overview**

Plaintiff Renzer Bell ("Bell") brings this action against Defendant Penske Automotive Group, Inc. ("Penske") and Defendant United Auto Group, Inc. ("UAG") for violations of his rights under a signed purchase order (the "Purchase Order") for the sale of a BMW. Neither Penske nor UAG were parties to the Purchase Order. However, Bell alleges UAG was the sole owner of a car dealership that signed the purchase order at all points relevant to this case. Further, Bell alleges that Penske later acquired UAG.

Defendants filed two motions with this Court: (1) a Motion to Dismiss and for Summary Judgment and (2) a Motion for Sanctions Against Plaintiff for Filing Frivolous Claims. For the reasons set forth below, I GRANT Defendants' motion to dismiss and motion for sanctions.

## Facts

In January 2000, Bell signed a Purchase Order on behalf of "Naki General Instruments–Mr. Renzer Bell" for the purchase of a "00 BMW" "Z8" from Classic Chevrolet/Buick and BMW ("Classic"), which is located in New Jersey. The Purchase Order listed the sale price as the Manufacturer's Suggested Retail Price (the "MSRP"). Bell claims that he believed that the contract entitled him to the "first allocated" 2001 BMW Z8, not the 2000 BMW Z8 indicated in the Purchase Order. Bell gave Classic a $500 deposit for this vehicle.

On September 22, 2000, Bell, on behalf of his company, Naki General Investment, L.L.C. ("Naki"), entered into an "Assignment of Contract of Sale-Motor Vehicle" (the "Assignment") with Crevier BMW, Inc. ("Crevier"). Crevier is located in Santa Ana, California. Bell entered into the Assignment even though Paragraph 14 of the Purchase Order states that "Customer and Dealer agree that this Order cannot be assigned to any third party, without written consent of both Customer and Dealer" and Classic did not give written consent to the Assignment. Under the Assignment, Crevier agreed to pay Naki $75,000 in excess of the MSRP for a 2001 BMW Z8.

Defendants state that because Classic never received a 2000 BMW Z8, Classic could not deliver such a vehicle to Bell as promised in the Purchase Order. Classic returned Bell's $500 deposit. Additionally, Classic was unwilling or unable to provide the first allocated 2001 BMW Z8 to Bell because they sold that vehicle to another buyer. Paragraph 8 of the Purchase Order states that "Dealer shall not be liable for any delay in delivering the motor vehicle covered by this Order where such failure or delay is due, in whole or in part, to any cause beyond the control or without the fault or negligence of Dealer." Bell claims that Classic's agent, Thomas Cossari, stated that Classic refused to sell the 2001 BMW Z8 to Bell "because he's a broker."

Bell filed a three-count complaint against UAG and Classic in the United States District Court for the Southern District of New York on January 29, 2004, claiming the existence of diversity jurisdiction and "alleging breach of contract, negligence and unjust enrichment arising out of a purchase order for a 2001 BMW Z8 automobile." Bell v. United Auto Group, Inc., 2007 WL 2892940, *1 (D.N.J. 2007) (J. Hillman). On July 5, 2006, the case was assigned to Judge Hillman of the United States District Court, District of New Jersey. In a September 28, 2007, opinion, Judge Hillman thoroughly describes the facts and procedural history of the case. Judge Hillman's opinion clearly describes Bell's inability to prove that his breach of contract claim against UAG and Classic is sufficient to meet the amount in controversy requirement of diversity jurisdiction:

> Bell filed suit against Defendants in the United States District Court for the Southern District of New York. The case was transferred to this district on April 28, 2005. Plaintiff originally sought $1,000 compensatory damages, $75,000 lost profits and $150,000 incidental and consequential damages for breach of contract; $76,000 lost profits, $150,000 incidental and consequential damages and $225,000 punitive damages for negligence; and $100,000 lost profits and $225,000 punitive damages for unjust enrichment. On August 9, 2005, Defendants filed a motion for partial summary judgment on Plaintiff's claims for negligence, unjust enrichment and punitive damages and Plaintiff filed a motion for leave to file a third amended complaint adding two claims.
>
> On January 30, 2006, District Court Judge Freda L. Wolfson, to whom this case was originally assigned, granted Defendants' motion for partial summary judgment and dismissed all of Plaintiff's claims except for his breach of contract claim, and denied plaintiff's motion to file a third amended complaint. On February 13, 2006, during the pendency of Plaintiff's motion for reconsideration of Judge Wolfson's January 30, [2]006 order, Defendants filed a motion to dismiss Plaintiff's breach of contract claim for lack of subject matter jurisdiction with regard to the jurisdictional amount in controversy. Defendants argued that they "learned through investigation that Plaintiff received $50,000 in or about June 2005 from Crevier in a settlement of claims (including claims arising out of the Crevier Assignment) brought by Plaintiff in a separate action commenced against Crevier in 2003 in the Southern District of New York." Defendants submitted to the Court a copy of a "Release Agreement" entered into by Plaintiff and "Michael E. Lake, Don Crevier, Crevier Motors, Inc. d/b/a Crevier BMW, Inc., and Crevier Leasing Co.,

3

Inc., and their successors, assigns, affiliates, and officers, directors, shareholders, employees, legal representatives, and insurers." The release agreement, dated June 23, 2005, set forth that in consideration for $50,000.00, all of Plaintiff's claims against the aforementioned individuals and entities were discharged and all of those individuals and entities were released from any and all liability arising from any causes of action.

In support of their motion to dismiss for lack of jurisdiction, Defendants argued that it appeared to a legal certainty that Plaintiff's claim was really for less than $75,000.01 and that Plaintiff's complaint was not made in good faith. Defendants also contended that a distinction existed between subsequent events that changed the amount in controversy and subsequent revelations that revealed that the required amount was or was not in controversy at the commencement of the action, and that such revelations required a dismissal for lack of jurisdiction. Defendants argued that Plaintiff's settlement with Crevier for $50,000 constituted such a revelation.

In a June 28, 2006 Opinion, Judge Wolfson concluded that without more information as to Plaintiff's settlement with Crevier, it could not be determined that the settlement constituted a revelation that Plaintiff's breach of contract claim was worth less than that required by § 1332. Additionally, with the "meager record" before her, Judge Wolfson could not find to a legal certainty that Plaintiff's breach of contract claim was worth less than the required $75,000.01.

Judge Wolfson noted that even though she was troubled by the fact that Plaintiff did not make any mention of his settlement with Crevier in his Rule 26 disclosures and only addressed the settlement in response to Defendants' motion, she was not prepared at that juncture to rule that Plaintiff filed his complaint in bad faith. Therefore, Judge Wolfson denied Defendants' motion to dismiss for lack of jurisdiction without prejudice. However, Judge Wolfson also directed Plaintiff to provide discovery regarding the settlement with Crevier, and to provide discovery regarding the specific damages he was seeking in connection with his breach of contract claim and the basis for asserting those damages at the time he filed the complaint. Judge Wolfson noted that beyond seeking $75,000 in lost profits, Plaintiff was seeking $1,000 in compensatory damages and $150,000 in incidental and consequential damages for breach of contract, but Plaintiff had not provided Defendants or the Court with any basis for such damages. As a result, Judge Wolfson directed that Plaintiff was to also provide discovery as to the $1,000 in compensatory damages and $150,000 in incidental and consequential damages so that the Court could determine whether Plaintiff acted in good faith when he filed his complaint seeking those damages.

Plaintiff's case was then assigned to this Court on July 5, 2006. A few weeks later, Defendants renewed their motion to dismiss for lack of subject matter jurisdiction, arguing that Plaintiff did not heed the direction of Judge Wolfson in providing any additional discovery with regard to his damages and the jurisdictional amount in

4

controversy. Oral argument was held, and the Court acknowledged that Plaintiff had not provided sufficient support for his alleged damages as directed by Judge Wolfson. Plaintiff was given "the benefit of the doubt," and provided thirty more days to submit his proof. The Court admonished, however, that Plaintiff "must specify and provide documentary proof or assert [ ] testimony for each of [his] elements of damages down to the penny."

On August 3, 2007, another hearing was held on the sufficiency of Plaintiff's proofs supporting subject matter jurisdiction. By this time, Plaintiff had submitted an affidavit with regard to his damages. In that affidavit, Plaintiff claims that in addition to the $75,000 in lost profits on the Crevier assignment, he lost $500 of a $1000 deposit he paid to Defendants. With regard to consequential and incidental damages, Plaintiff claims that he lost $240 in postage and $660 in telephone calls while trying to "cover" his losses. Thus, in total, Plaintiff claims that his damages are $76,400.00, which satisfies the jurisdictional amount in controversy requirement.

At oral argument, Defendants again raised the issue of Plaintiff's settlement with Crevier. Instead of focusing on whether the settlement was a subsequent revelation evidencing that Plaintiff had not pleaded in good faith the amount in controversy at the beginning of the litigation, Defendants argued that Plaintiff did not act in good faith in bringing this case against them because he knew that Crevier repudiated their contract prior to Defendants informing Plaintiff that they did not have a BMW Z8 to sell to Plaintiff. Defendants also argued that Plaintiff received $4,000 in earnest money from Crevier that Plaintiff never repaid, so that Plaintiff's claimed damages must be reduced by $4,000. Therefore, even accepting as true Plaintiff's claimed consequential and incidental damages, Defendants argue that the most Plaintiff could conceivably recover is $72,400, which is less than the jurisdictional requirement of $75,000.01.

Bell v. United Auto Group, 2007 WL 2892940, at *1-3 (citations and footnotes excluded).

Judge Hillman dismissed Bell's complaint for lack of subject matter jurisdiction, stating that "[i]n the end, it is Plaintiff's own statements that demonstrate it is a legal certainty that his claim, including his alleged incidental damages, totals less that $75,000.01.". Id. at *5. The opinion clearly shows that the court granted Bell numerous opportunities to show that he could, in good faith, allege that amount in controversy exceeded $75,000, as required by 28 U.S.C. § 1332, and that Bell failed to do so. Id. at *1-3.

5

The court even went so far as state that evidence indicated that Bell was not litigating in good faith. The court stated:

> Plaintiff's apparent unwillingness–masked as a self-professed inability–to remember or document facts known only to him and which a reasonable business person in his position would remember or know (e.g. whether he received $4,000 from Crevier) is just one example of plaintiff's failure to conduct this litigation in "good faith." From his failure to abide by the orders of Judge Wolfson, his failures to abide by the orders of this Court, his filing of pleadings in two districts that are factually inconsistent, his unwillingness to answer the Court's direct questions, his failure to provide discovery on issues that appear to be legal vulnerabilities, to the ease in which he changes facts to suit his argument, plaintiff has demonstrated that he views the litigation process as a game of hide and seek rather than full disclosure of relevant facts and a fair adjudication on the merits.

Id. at *5 n.5. The court also pointed to Bell's history of frequent litigation.

> We take judicial note of the fact that the Plaintiff is a frequent litigant who has faced several dismissals and sanctions for improper conduct in the course of litigation. As one court noted:
>
>> "In addition to the eleven claims in this District, Mr. Bell has been active elsewhere. See Bell v. Hesser, 2006 WL 1455749 (M.D.Pa., May 23, 2006) (granting defendants' motion for judgment on the pleadings); Bell v. Bray and Gillespie, LLC, 2006 WL 923741 (M.D.Fla. Apr. 10, 2006) (requiring Bell to pay opposing party's attorneys' fees in necessitating a motion to compel)."

Bell v. South Bay European Corp., 486 F.Supp.2d 257, 257 n .1 (S.D.N.Y.2007) (case *sub judice* omitted). Significantly, the Bell court added:

> Mr. Bell is not a stranger to the rule that a lay person may not represent an entity. In February 2002, Naki General Investment, L.L.C. commenced an action in this Court represented by an attorney. Naki General Investment, L.L.C. v. Schaeffer Buick Inc., 02 Civ. 0959(SAS). Counsel was granted leave to withdraw because of an alleged threat by Mr. Bell "to slit my f___ king throat". (See Transcript of April 5, 2002 proceeding before Judge Scheindlin at 2, 5.) Mr. Bell, an officer of the entity, was instructed to retain counsel. When no counsel appeared for the plaintiff entity after repeated opportunities to do so, the action was dismissed. (Order of May 22, 2002 (Docket # 8)) Thereafter Mr. Bell refiled an action in this District styled as Renzer Bell, doing business as Nakhi General Investment v. Schaeffer Buick, Inc., 03 Civ. 10315(PKC). The undersigned did not bar Mr. Bell from proceeding *pro se*, despite what now appears to be a transparent attempt to circumvent Judge Scheindlin's ruling."

6

> Bell, at 260. In sum, plaintiff, who controls companies that operate from post office boxes and whose records he claims not to have, has filed more than a dozen different lawsuits in federal courts in New York, Florida, and in this court. It is evident to us that plaintiff is more of a professional litigant than he is a professional car trader.

Bell v. United Auto Group, 2007 WL 2892940, at *5 n.6.

Bell appealed Judge Hillman's ruling, but the Third Circuit dismissed Plaintiff's appeal on December 31, 2007, because Bell failed to timely prosecute it. (Def.'s Mot. to Dismiss and for Summ. J., Ex. 1).

On July 7, 2008, Bell filed the present case in this Court. Bell's Complaint raises the same breach of contract claim that Judge Hillman dismissed for lack of subject matter jurisdiction. Bell also seeks to recover under Title 15 of the United States Code and Article One, Section 8 of the United States Constitution, claiming that the Defendants' refusal to sell the 2001 BMW Z8 to Bell because he is a broker constitutes an unlawful restraint of trade. On October 27, 2008, Defendants filed a Motion to Dismiss and for Summary Judgment. On November 24, 2008, Defendants filed a Motion for Sanctions Against Plaintiff for Filing Frivolous Claims. On February 2, 2009, this Court entered Bell's Amended Complaint and notified the parties that this Court would apply Defendants' motion to dismiss and for summary judgment and motion for sanctions to Bell's Amended Complaint if Defendants did not file a new motion. The Defendants have filed no additional motions. For the reasons set forth below, I GRANT Defendants' Motion to Dismiss and for Summary Judgment and GRANT Defendants' Motion for Sanctions Against Plaintiff for Filing Frivolous Claims.

## **Standards for Such Motions**

A court may grant a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted. A court should grant such a motion "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). Further, the court "must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." Ziegler v. IBP Hog Mkt., Inc., 249 F.3d 509, 512 (6th Cir. 2001).

Summary judgment is proper if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if proof of that fact would establish or refute one of the essential elements of a claim or defense and would affect the application of governing law to the rights and obligations of the parties. Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984). The court must view the evidence and any inferences drawn therefrom in a light most favorable to the nonmovant. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). For a claim to survive summary judgment, the nonmovant must offer more than a mere scintilla of evidence as to the material facts. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). The movant's burden is satisfied where there is an absence of evidence to support the nonmovant's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

## Analysis

### I) Bell's Claim Under "U.S.C. Title 15" Fails to State a Claim Upon Which Relief can be Granted

Bell's Amended Complaint states that "the defendants <u>did not</u> have the authority nor the right to restrict the Plaintiff from engaging in lawful commerce as supported by Article One, Section Eight (8) of the United States Constitution, *U.S.C. Title 15*, by Common Law precedent, and the various Federal Trade Laws." Amended Complaint, at 42 (emphasis in original). Bell further claims that the Defendants failed to sell the BMW to him because he is a broker. Amended Complaint, at 34.

Bell generally refers to (1) Congress's constitutional power to tax and regulate commerce and (2) Title 15 of the U.S. Code, which regulates commerce and trade, to support what appears to be a claim for unlawful restraint of trade. Bell has provided no law, and this Court can find no law, that creates a right to recover under a claim of unlawful restraint of trade for what amounts to an alleged breach of contract by a company against a United States citizen. A court will grant a motion to dismiss if there is an absence of law to support a claim of the type made. Asp v. Toshiba America Consumer Products, LLC, 2008 WL 5431171, *3 (S.D. Ohio 2008). Because there is an absence of law to support Bell's unlawful restraint of trade claim, I dismiss this claim.

### II) Bell's Amended Complaint Must be Dismissed Due to a Lack of Subject Matter Jurisdiction

A federal trial court does not have subject matter jurisdiction over a complaint if there is no diversity jurisdiction and no federal question jurisdiction. See Pan Am. Petroleum Corp. v. Superior Court of Del. In and For New Castle County, 366 U.S. 656, 663 (1961). Federal question jurisdiction exists if a claim in a civil action arises "under the Constitution, laws, or

treaties of the United States." 28 U.S.C. 1331. Diversity jurisdiction exists if there is complete diversity and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332.

Count I of Bell's Amended Complaint pleads a claim of breach of contract–a state law claim. As discussed above, Count II of Bell's Amended Complaint fails to state a claim upon relief can be granted, and as a result, fails to state a federal claim. Thus, Bell's Amended Complaint fails to plead a federal question, and this Court only has jurisdiction over Bell's Amended Complaint if diversity jurisdiction exists. I rule that diversity jurisdiction does not exist.

In his Amended Complaint, Bell alleges total damages of not less than $150,000. Bell cannot now plead this amount of damages in good faith. Judge Hillman dismissed the same breach of contract claim that Bell pleads here in the case of <u>Bell v. United Auto Group, Inc.</u>, 2007 WL 2892940. The only difference between the breach of contract claim in Judge Hillman's case and the one presented here is that in this case Bell has added Penske and removed Classic as Defendants. Judge Hillman stated in this previous case that "[i]n the end, it is Plaintiff's own statements that demonstrate it is a legal certainty that his claim, including his alleged incidental damages, totals less that $75,000.01.". <u>Id.</u> at *5. Judge Hillman reached this conclusion after giving Bell numerous opportunities to present evidence that his claim met the amount in controversy. Bell failed to do so and substantial evidence suggests that Bell was acting in bad faith in arguing that his claim did exceed $75,000.

Bell failed to prove in prior litigation that the amount in controversy for his breach of contract claim exceeds $75,000. He cannot now in good faith claim that the amount in controversy for the same claim is $150,000. In fact, because the issue of the amount in

controversy was fully and fairly litigated in an earlier case between Bell and UAG, and because Bell has provided no evidence that would allow this Court to find that he can assert a higher amount in controversy now, res judicata precludes Bell from relitigating the amount in controversy requirement. This is true, even though Judge Hillman, in Bell v. United Auto Group, Inc., did not explicitly dismiss Bell's breach of contract claim on the merits and with prejudice. See Kutten v. Bank of America, N.A., 2007 WL 2485001, at *9 (E.D. Mo. 2007).

The record before this Court demonstrates that it is a legal certainty that Bell's breach of contract claim totals less that $75,000.01. Thus, this Court does not have jurisdiction over Bell breach of contract claim. Further, because this Court does not have federal question jurisdiction or diversity jurisdiction over Bell's Amended Complaint, I dismiss Bell's Amended Complaint due to lack of subject matter jurisdiction.

### III) Sanctions

Defendants also request that this Court grant its motion for Rule 11 sanctions. "Rule 11 provides for sanctions against an attorney or unrepresented party who files a pleading for any improper purpose, or which has no basis in law or fact." Kaye v. Acme Investments, Inc., 2008 WL 4482304, *1 (E.D. Mich. 2008). "Pro se litigants must comply with Rule 11 no less than attorneys, and must make a reasonable inquiry as to whether the pleading in question is well-grounded in fact and warranted by existing law." Id. "Sanctions may be imposed under the Federal Rules of Civil Procedure for filing frivolous lawsuits or lawsuits for an improper purpose, such as to harass or impose needless cost on a party." Fieger v. Cox, 524 F.3d 770, 776 (6th Cir, 2008). In determining whether Rule 11 has been violated, the Court must assess whether the individual's conduct was reasonable under the circumstances. Lemaster v. United

States, 891 F.2d 115, 118 (6th Cir.1989). The test of reasonableness under the circumstances is an objective standard. Century Prods., Inc. v. Sutter, 837 F.2d 247, 253 (6th Cir.1988). This objective standard is intended to eliminate any "empty-head pure-heart" justification for patently frivolous arguments. Nieves v. City of Cleveland, 153 Fed.Appx. 349, 353 (6th Cir. 2005). The primary purpose of Rule 11 sanctions is to deter future conduct of a like nature. Kaye, 2008 WL at *1.

Even though Bell is a pro se litigant, he is required to make a reasonable inquiry as to whether his pleadings are well-grounded in fact and warranted by existing law. However, Bell's Complaint and Amended Complaint are not warranted by existing law. A prior Court has already dismissed Bell's claim due to his repeated inability to show that his breach of contract claim against Classic and UAG establishes an amount in controversy of at least $75,000.01. Yet, Bell's Amended Complaint alleges that this breach of contract claim entitles him to not less than $150,000. This claim is not well-grounded in fact and Bell knows this because Judge Hillman ruled on this specific issue. Bell v. United Auto Group, 2007 WL at *5. Indeed, Judge Hillman held that it was Bell's own statements that demonstrated to a legal certainty that his claim amounted to less than $75.000.01. Id. No reasonable attorney, even a *pro se* attorney, could now plead $150,000 in damages.

Also, Bell's cause of action under Title 15 is so amorphous and ungrounded in existing law that Bell could not have pleaded it in good faith. Bell provides no support for his strange claim that the Defendants' alleged refusal to provide him with the BMW because he was a broker constitutes an unlawful restraint of trade and violates either Article One, Section Eight of the

United States Constitution or Title 15. Indeed, a close reading of Bell's second cause of action reveals that it is nothing more than a restatement of his breach of contract claim.

Further, Bell appears to think that litigation is a game. In <u>Bell v. United Auto Group, Inc.</u>, Judge Hillman plainly indicated that the Court believed that Bell was operating under bad faith through the litigation process. 2007 WL at *5 n.5. The record before this Court indicates that Bell believes that he is at liberty to adjust alleged facts to suit his claims (e.g., claiming an amount in controversy of $150,000 after a court dismissed the same claim due to his failure to prove that $75,000.01 was in controversy). In <u>Bell v. South Bay European Corp.</u>, 486 F.Supp.2d 257, 260 (S.D.N.Y. 2007), the Court also noted Bell's "transparent attempt to circumvent [another Court's] ruling." By claiming here that the amount in controversy is $150,000, Bell again appears to be attempting to circumvent the ruling of another court, this time Judge Hillman's dismissal of Bell's breach of contract claim. See <u>Bell v. United Auto Group, Inc.</u>, 2007 WL 2892940.

The record indicates that Bell has proceeded in bad faith in this case and that his Complaint and Amended Complaint are not well-grounded in fact and warranted by existing law. Therefore, Bell's conduct has not been reasonable under the circumstances presented here, and I GRANT Defendants' Motion for Sanctions Against Plaintiff for Filing Frivolous Claims.

### **Conclusion**

For the reasons stated above, I GRANT Defendants' Motion to Dismiss and for Summary Judgment and hereby dismiss Bell's Amended Complaint in its entirety and with prejudice. Also, I hereby preclude Bell from again suing Defendants in federal court with regard to the allegations in his Complaint or Amended Complaint. Finally, I GRANT Defendants' Motion for

Sanctions and award Defendants their costs and attorneys' fees for defending this matter, in the amount of $11,470.26.

**IT IS SO ORDERED.**

Date: *March 31, '09*

*John Feikens*
United States District Judge